# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNIVERSAL DELAWARE, INC., et al., on behalf of themselves and all others similarly situated, | CIVIL ACTION |
| Plaintiffs, | |
| v. | No. 07-1078 |
| COMDATA CORPORATION, et al., | |
| Defendants. | |

HENRY S. PERKIN,
UNITED STATES MAGISTRATE JUDGE

**MEMORANDUM**

The instant discovery issue before the Court is Plaintiffs' motion to compel non-party Ceridian Corporation ("Ceridian") to produce documents pursuant to Federal Rule of Civil Procedure 45 (Dkt. No. 90).[1]  Following extensive briefing and telephonic conferences placed on the record, Plaintiffs' motion is GRANTED.

**I.  PROCEDURAL HISTORY**.

Plaintiffs filed their consolidated Amended Complaint on May 1, 2007.  Ceridian was initially named as a party to this case based solely on alter-ego and agency theory.  On June 22, 2007, Ceridian filed a motion to dismiss the Complaint as to Ceridian.  Plaintiffs agreed to voluntarily dismiss Ceridian from

---

[1]This matter was assigned to me pursuant to Standing Order No. 1 of the Honorable James Knoll Gardner.

the case without prejudice to Plaintiffs' right to amend and rename Ceridian as a defendant and toll the statute of limitations. On October 18, 2007, the parties executed and submitted a Stipulation and Order dismissing Ceridian without prejudice to Plaintiffs' right to amend and rename Ceridian as a Defendant and toll the statute of limitations. The Honorable James Knoll Gardner, the presiding District Court Judge, approved the stipulation on December 18, 2007. The stipulation included the following: Ceridian agreed to preserve documents and other materials relevant to this litigation to the same extent as if Ceridian were still a party to the litigation; to respond in good faith to reasonable requests for third party discovery related to this case, and in addition, not interpose objections to discovery requests (as a non-party) for the purpose of delaying production of documents or witnesses past the deadline for amending the complaint contained in the operative scheduling order; that service of subpoenas on Ceridian's counsel in Philadelphia constituted service of process on Ceridian and/or any of its current employees under applicable rules and law; and that Ceridian will submit to the jurisdiction of this Court in the Eastern District of Pennsylvania for resolution of discovery disputes relating to subpoenas that Plaintiffs serve upon Ceridian or Ceridian employees.

On February 20, 2008, the amended stipulated protective

order governing the use and handling of documents, electronic information in any form, testimony, interrogatory responses and other information in pre-trial proceedings in this litigation was approved.

On December 23, 2008, Plaintiffs filed a Motion to Compel Third Party, Ceridian Corporation, to Comply with Subpoena and Produce Responsive Electronically Stored Information ("ESI"). Because no Response to the Motion was filed on or before January 6, 2009, this Court granted the Motion to Compel as unopposed on January 16, 2009. The Order was docketed at 4:30 p.m. That same day at 6:00 p.m., Ceridian filed the Response in Opposition to the Motion to Compel. On January 26, 2009, Plaintiffs filed a Reply to the Response to the Motion to Compel.

On January 30, 2009, this Court vacated the January 16, 2009 Order granting the Motion to Compel as unopposed because counsel failed to advise the Court that Plaintiffs' counsel agreed to an extension until January 16, 2009 for Ceridian to respond to Plaintiffs' Motion. Plaintiffs filed their Reply Memorandum of Law on January 26, 2009. On February 17, 2009, Ceridian was ordered to submit, on or before Friday, February 20, 2009, a detailed summary of its incurred and anticipated costs to comply with the subpoena divided into paper discovery and electronic discovery. On February 20, 2009, Ceridian filed its Statement of Estimate and Summary of Incurred and Anticipated

Discovery Related Costs.  On February 23, 2009, Plaintiffs were ordered to submit, on or before March 9, 2009, a Response Brief to Ceridian's Cost Estimate and Summary.  On March 2, 2009, Plaintiffs filed a Response in Support of the Motion to Compel.  On March 10, 2009, Ceridian filed a Reply to the Response.

On April 17, 209, Ceridian's counsel submitted a letter to Chambers.  Plaintiffs' counsel submitted a letter in response on April 21, 2009, to which Ceridian's counsel replied in correspondence dated April 23, 2009.

On April 27, 2009, a telephone conference was held regarding Plaintiffs' Motion to Compel Ceridian to Comply with the Subpoena and Produce Responsive ESI, Ceridian's issue with an $8000 cost per month to maintain a database, and whether Ceridian could obtain a complete, unredacted version of Plaintiffs' proposed Second Amended Complaint.  The telephone conference was continued on May 1, 2009.

By Order dated January 14, 2009 and by agreement of counsel, Plaintiffs had until April 6, 2009 to file a motion to amend the consolidated Amended Complaint to add claims, theories, or new parties.  On April 6, 2009, Plaintiffs filed a motion for leave to amend the consolidated Amended Complaint which would add the TA group of Defendants and Ceridian as Defendants.

On May 21, 2009, Plaintiffs initiated Civil Action 09-cv-2327 by filing a Class Action Complaint against Ceridian, the

4

TA group of Defendants, Petro Stopping Centers, L.P., Pilot Travel Centers, LLC, Pilot Corporation and Love's Travel Stops & Country Stores.  On April 23, 2009 and May 4, 2009, the TA group of Defendants and Ceridian, respectively, sought to intervene in the 2007 action for the limited purpose of opposing Plaintiffs' motion to amend.

Judge Gardner entered a number of orders on March 24, 2010, including: (1) consolidating Civil Action No. 09-cv-2327 into Civil Action No. 07-cv-1078 and dismissing from the 09-2327 case without prejudice the pending Motions to Dismiss of Ceridian, TA, Love's Travel Stops & Country Stores, Inc., and Pilot Travel Centers LLC and Pilot Corporation; (2) denying the motions to intervene of Ceridian and TA for the limited purpose of opposing Plaintiffs' Motion to Amend; and (3) granting Plaintiffs leave to file a Second Consolidated Amended Complaint on or before April 7, 2010, encompassing all claims and defendants in the 2009 case.

**A.    Plaintiff's Motion to Compel.**

1.    Plaintiffs' Motion.

Plaintiffs move for entry of an order compelling third-party Ceridian to comply with a subpoena duces tecum by producing responsive electronically stored information ("ESI") from the back-up tapes of five custodians and active databases of 21 custodians, without requiring Plaintiffs to compensate Ceridian

5

for any fees it pays its own attorneys to review such discovery materials. Plaintiffs request that the Court compel Ceridian to fulfill its requirements as outlined in the Joint Stipulation and Proposed Order Dismissing Ceridian without prejudice to Plaintiffs' right to amend and rename Ceridian as a Defendant and Tolling the Statute of Limitation. Plaintiffs contend that after Ceridian initially agreed to provide ESI on a rolling basis and to complete production by August 8, 2008, Ceridian began imposing an increasing number of onerous conditions on producing any ESI. Months of negotiations ensued during which Plaintiffs made a series of concessions, including agreeing to limit Ceridian's search to the following sources for responsive ESI: (1) a database maintained by Kroll Ontrack, Ceridian's electronic discovery vendor, that consists of previously processed back-up tapes for five custodians;[2] and (2) the Company's "active" or "live" databases to twenty-one custodians. Plaintiffs further agreed that Ceridian may search these databases for responsive ESI using seventeen search terms, and to pay all costs associated with providing .tiff images of documents returned from the search of the specified back-up tapes, provided that Kroll Ontrack properly substantiates these costs. Ceridian did not produce any ESI responsive to Plaintiffs' subpoena. Instead, Ceridian insisted that Plaintiffs agree to reimburse Ceridian for one-half

---

[2]The five custodians include John "Jack" Eickhoff, Loren "Buzz" Gross, Ron Turner, Gary Nelson and Craig Manson.

6

of any amount above $10,000 that Ceridian pays its own attorneys to review responsive ESI for privileged materials before Ceridian would begin the production.

Plaintiffs contend that the Subpoena seeks relevant information and is not unduly burdensome.  Plaintiffs also contend that Ceridian should not be reimbursed for its review costs.  If Ceridian is to be considered a third-party to this litigation, Plaintiffs contend that, despite Ceridian's express obligation under the Stipulation to Dismiss to exercise "good faith" in producing discovery and refrain from engaging in delaying tactics, Ceridian is still responsible for bearing the costs of its own review pursuant to Brown v. City of Maize, Kansas, No. 07-1178, 2008 WL 754742, at *4 (D. Kan. Mar. 18, 2008).

2. Ceridian's Response.

Ceridian opposes the Motion to Compel on the basis that Plaintiffs place only one issue before the Court for decision, whether Plaintiffs may impose on non-party Ceridian the financial burden of a broad electronic review without contribution from Plaintiffs for the cost of review and production.  According to Ceridian, Federal Rule of Civil Procedure 45, relevant case law and discovery treatises state that non-parties are entitled to be compensated for all aspects of expenses associated with responding to a subpoena.

3. <u>Plaintiff's Reply</u>.

Plaintiffs contend, in reply, that contrary to Ceridian's claims, courts routinely reject third parties' requests for reimbursement for their review and inspection costs where the non-party has an "interest in the outcome" of the litigation. Pls.' Reply, p. 2 (citing <u>In re Subpoena to Bank TD N.A.</u>, No. 8-101-P-S, 2008 U.S. Dist. LEXIS 99888, at *12-13 (D. Maine Dec. 1, 2008)(denying nonparty TD Bank'S request to be reimbursed for $10,871 in attorney fees since it was "not an innocent third-party," but rather was a nonparty with "an interest in the outcome of the case"); <u>In re Seroquel Products Liability Litig.</u>, No. 6:06-md-1769-Orl-22DAB, 2007 U.S. Dist. LEXIS 89903, at *8-11 (M.D. Fla. Dec. 6, 2007)(denying nonparty's request for $28,950 in attorney fees because nonparty doctor/consultant was "not a 'classic disinterested non-party'"); <u>JP Morgan Chase Bank v. Winnick</u>, No. 03 Civ. 8535 (GEL), 2006 WL 3164241, at *2 (S.D.N.Y. Nov. 2, 2006)(denying nonparty Toronto Dominion's request for attorney fees because "while [nonparty] Toronto Dominion will not benefit directly from any recovery, the claim of fraud advanced by plaintiff in this case is the sort of litigation that will benefit institutional lenders like Toronto Dominion"); <u>FTC v. U.S. Grant Resources, LLC</u>, Case No. 04-596, 2004 U.S. Dist. LEXIS 11389, at *12-13 (E.D. La. June 18, 2004)(denying nonparty Louisiana Attorney General's Office's

request for review and inspection costs because it was an interested party in the FTC's litigation which was prosecuting a "parallel criminal matter"); In re Honeywell International, Inc. Sec. Litig., 230 F.R.D. 293, 302-303 (S.D.N.Y. Nov. 18, 2003) (denying nonparty PWC's request for reimbursement of production, inspection and review costs since it was not a "classic disinterested nonparty").

Here, Plaintiffs contend that Ceridian cannot dispute that it is an interested party to this litigation and has an interest in the lawsuit's outcome because Defendant Comdata is Ceridian's wholly-owned subsidiary. Moreover, unlike the parties in the cited cases, Ceridian was a former Defendant in this litigation and was dismissed on the condition that it fulfill its discovery obligations "to the same extent as if Ceridian were still a party to the litigation." Plaintiffs also note that Ceridian agreed to unconditionally produce all responsive ESI by a date certain and only until Ceridian "reneged" on its previously agreed-upon production arrangements that it sought to be reimbursed for review costs. Pls.' Reply, p. 4.

Plaintiffs also note that Ceridian does not cite any cases similar to the instant case where the non-parties had an interest in the related litigation or were former parties who were voluntarily dismissed on the condition that they fulfill certain discovery obligations. Plaintiffs distinguish cases

9

cited by Ceridian on other grounds, including that the non-parties did not seek reimbursement of attorneys' fees, the non-parties were producing discovery pursuant to a subpoena issued from a court in a foreign jurisdiction, the movant party had entered into a formal memorandum of understanding agreeing to reimburse the non-party for expenses and fees incurred in producing responsive discovery, the non-parties incurred millions of dollars in out-of-pocket costs in complying with discovery demands, and the non-parties were asked to produce documents previously prepared for prior litigations, thereby raising attorney-client and work-product issues.  Pls.' Reply Mem., p. 5.

Plaintiffs argue that Ceridian adopts a myopic view of the Stipulation it signed when it was voluntarily dismissed from this case in an effort to "wiggle out" of its previously agreed-upon production arrangements.  Plaintiffs point to the period of time between March and late July 2008 when Ceridian agreed unconditionally to produce all responsive ESI on a rolling basis and complete production by August 8, 2008, only on July 21, 2008 Ceridian raised the prospect of sharing costs for processing the ESI.  On August 5, 2008, three days before the production date, Ceridian first raised the issue of Plaintiffs' compensating Ceridian for attorney-review costs.  Pls.' Reply Mem., p. 6. Plaintiffs note that Ceridian did not present any evidence or supporting documentation to support its claim that it incurred

$100,000 to comply with Plaintiffs' subpoena.  Id.

   **B.   Estimated Costs and Progress Toward A Resolution**.

This Court ordered Ceridian to provide an estimate of the costs involved in producing the requested ESI in this case. As of January, 2009, the claimed costs were $101,891.40, with the anticipated projected costs ranging from $705,390 to $990,719.60. Plaintiffs responded to these estimates by stating that the incurred expenses were "wildly excessive" and the anticipated costs were "grossly inflated."

Ceridian filed a Reply to Plaintiffs' Response, stating that Ceridian reviewed over 13 GB of data, and the ratio of the time and high cost of review to the extremely low yield of relevant materials caused Ceridian to seek limitations on the scope of the search and a cost-sharing agreement.  In addition, Ceridian contended that Kroll Ontrack, their third-party vendor, should determine the number of documents from the back-up tapes requiring review.

Plaintiffs first objected to Ceridian's Reply because Ceridian did not seek leave from the Court to Reply.  However, in an effort to move the litigation along, Plaintiffs agreed initially to limit Ceridian's discovery production obligations to producing ESI from the back-up tapes of the five identified custodians.  To the extent that information is recovered from the back-up tapes that provides a reasonable belief that additional

relevant information may be in the data of the active databases of the twenty-one custodians, Plaintiffs contend that they may request additional searches on those twenty-one databases. Plaintiffs contend that Ceridian remains obligated to pay for all review costs as supported by the Joint Stipulation that expressly mandates that Ceridian should fulfill its discovery production requirements to the same extent as if Ceridian were still a party to this litigation.

Ceridian notes that backup data stored on the database of Kroll Ontrack, its outside vendor, incurs a monthly fee of $8597.92 per month. The database was originally created for an unrelated matter which is resolved, and except for this litigation, the database would be destroyed. The processing cost of information contained on this database potentially relevant to Plaintiffs' production requests is $4,085. Ceridian contends that Plaintiffs previously agreed in an email to pay the $4,085 processing cost, and now Plaintiffs refuse to honor this agreement therefore Ceridian seeks an order requiring Plaintiffs to pay the $4,085 processing cost or, in the alternative, an order relieving Ceridian of any obligation to maintain the database.

Plaintiffs contend that they have offered to pay $4,085 for processing certain documents, which is the amount Ceridian represented it would cost to produce .tiff images for documents

from five Ceridian custodians, John Eickenhoff, Loren Gross, Ron Turner, Gary Nelson and Craig Manson.  Plaintiffs contend that after they confirmed their willingness to pay the $4,085 and Ceridian began processing the documents, counsel for Ceridian sent Plaintiffs an invoice/paperwork from Kroll Ontrack which was a proposed contract with Kroll Ontrack consisting of a detailed statement of work and Kroll's pricing structure for discovery-related tasks.  Plaintiffs refused to sign the invoice because it did not specifically set forth the amount that Plaintiffs were obligated to pay, and it sought to impose improper, far-reaching obligations on Plaintiffs.

Ceridian responded that it does not intend to destroy any of its ESI documents including those on the database at issue, but it would be expensive and time-consuming for any information currently on that database to be retrieved in any usable format other than from that database.  Ceridian maintains that, as a non-party, they are under no obligation to maintain the database at $8000 per month, there is no business reason for maintaining the database, and taking down the database does not destroy the documents, it makes their retrieval more costly and burdensome.  Ceridian maintains that Plaintiffs should bear the monthly cost of the database if it is to their benefit to facilitate further inquiries.  Moreover, Ceridian notes that Plaintiffs filed a motion to amend their Complaint to add

Ceridian as a Defendant, which is an improper maneuver to shift the costs for responding to Plaintiffs' discovery requests.

**II. DISCUSSION.**

Judge Gardner's recent decisions regarding the pending motions now allow this Court to render decision on the pending motion to compel.

During an April 27, 2009 telephone conference with counsel for the Plaintiffs and Ceridian, the parties agreed to investigate other avenues of storage and copying of the subject Ceridian database. During a May 1, 2009 telephone conference, Plaintiffs' counsel stated that, following the April 27, 2009 telephone conference, Plaintiffs do not perceive that they will obtain any additional ESI information if they pay $4085 to Kroll Ontrack to create a separate database and then after Ceridian reviews it for privilege, Plaintiffs will still have no documents because Plaintiffs will be required to pay for the review of the documents and .08¢ per page. Ceridian's counsel stated that the anticipated costs depend on the number of documents resulting from .tiffing the database and running the search terms and then Ceridian returns to the Court with the estimated costs of review.

Mr. Joel Bothof, an electronic evidence consultant of Kroll Ontrack in Eden Prairie, Minnesota, was joined onto the conference call for a short period of time on May 1, 2009. According to Mr. Bothof, copying the .tiffed Ceridian database

14

into a second database is the least expensive option to provide a searchable database for this case and keep the prior Ceridian litigation matter intact because the existing database from prior litigation also contains work product attached to the documents. The present format of the documents on the existing Ceridian database is native, .tiffed, searchable text and proprietary. According to Mr. Bothof, when the database is .tiffed, the metadata is not scrubbed.

Mr. Bothof reported that the cost for document production depends on the number of documents produced through searching with agreed-upon search terms. The monthly hosting fee for a new database created from copying the existing database into a new database is $854 per month on a per page rate. When asked the estimated cost if every document on the existing database comes up with search terms, Mr. Bothof stated that the least expensive way to produce those documents would be to .tiff them to a third database, which would incur costs of .08¢ per page for a total of $17,334 plus shipping pass-through costs. It is estimated that it will take less than 10 days .tiff the database and run the search terms.

The 2006 Amendments to Federal Rule of Civil Procedure 45 note that Rule 45(c)(1) directs that a party serving a subpoena "shall take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and Rule

45(c)(2)(B) permits the person served with the subpoena to object to it and directs that an order requiring compliance "shall protect a person who is neither a party not a party's officer from significant expense resulting from" compliance. In this case, Ceridian is currently a non-party, although Judge Gardner has given Plaintiffs leave until April 7, 2010 to amend their consolidated Second Amended Complaint. Due to Plaintiffs' filing the 2009 case against Ceridian, it is likely that Plaintiffs will amend their Complaint to include Ceridian as a Defendant. Nonetheless, Ceridian is currently a non-party in this action and thus, is entitled to protection against undue impositions. Both Plaintiffs and Ceridian have been cooperative in working with each other and this Court in attempting to reach a compromise on this issue.

It appears to this Court that the most efficient way of accomplishing compliance with Plaintiffs' ESI subpoena can be accomplished by Kroll Ontrack's creation of a separate database comprised of the .tiffed images of documents from back-up tapes of Ceridian's four custodians.[3] Ceridian has satisfied its burden of showing that the requested discovery is not reasonably accessible and the information requested is on marginally accessible media, the back-up tapes. Pursuant to Plaintiffs' prior agreement, Plaintiffs shall pay $4,085 to Kroll Ontrack as

---

[3] The parties previously agreed to excise Ceridian's general counsel from the custodians.

an initial start-up fee, but Ceridian shall execute any paperwork required by Kroll Ontrack for this processing because the database shall be created from Ceridian's existing database, and it is created pursuant to Ceridian's duty to comply with the Plaintiffs' subpoena.

Some cost-shifting is appropriate in this case pursuant to <u>Zubulake v. UBS Warburg LLC</u>, 217 F.R.D. 309 (S.D.N.Y. 2003), because the data at issue in this case is kept in an inaccessible format, i.e., back-up tapes, some of the costs involved in producing this data will be shared by Plaintiffs and Ceridian. There is a seven-factor test for determining whether the costs should shift: (1) the extent to which the request is specifically tailored to discover the relevant information; (2) the availability of such information from other sources; (3) the total cost of production, compared to the amount in controversy; (4) the total cost of production, compared to the resources available to each party; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits to the parties of obtaining the information. <u>Id.</u> at 322.

Both the Plaintiffs and Ceridian have worked to narrow the focus of the search of the four back-up tapes to use search terms that may lead to the discovery of relevant information.

17

Such information is unavailable from other sources, and both Plaintiffs and Ceridian have a high incentive to control the costs of this litigation, particularly Ceridian because it is not currently a party to the litigation. Obtaining the information sought may be helpful to the ultimate resolution of this case. The Plaintiffs have filed ancillary actions around the country in attempts to obtain information from other sources that may be contained within Ceridian's data. Obtaining this information may help the Plaintiffs in their pursuit of this antitrust action, and it may be helpful to Ceridian to defend its interests, depending on whether Plaintiffs re-plead Ceridian as a Defendant in this suit.

Accordingly, Ceridian shall direct Kroll Ontrack to create a separate database comprised of the .tiffed images of documents from the four custodians, and Plaintiffs and Ceridian are each 50% responsible for the cost to create the separate database, estimated by Mr. Joel Bothof of Kroll Ontrack to be approximately $17,334 + shipping pass-through costs. Both Plaintiffs and Ceridian shall each pay their respective fifty percent share of the fee for the database creation directly to Kroll Ontrack. Ceridian shall have Kroll Ontrack execute a search of the new database using previously agreed-upon search terms, and counsel for Ceridian shall conduct a privilege review of the documents resulting from Kroll Ontrack's database search.

Ceridian shall bear the costs of this privilege review of its own documents.  Thereafter, Ceridian shall produce to Plaintiffs the responsive documents and a detailed privilege log for any documents withheld on the basis of privilege.

The creation of the database, searching and document review and production shall take place over the next sixty days, and the Court will schedule a conference with counsel for Plaintiffs and Ceridian at the expiration of that sixty day period to ascertain the status of discovery.

An appropriate Order follows.