# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNIVERSAL DELAWARE, INC., et al., on behalf of themselves and all others similarly situated, | CIVIL ACTION |
| Plaintiffs, | |
| v. | No. 07-1078 |
| COMDATA CORPORATION, et al., | |
| Defendants. | |

HENRY S. PERKIN
United States Magistrate Judge

**MEMORANDUM**

Presently before this Court is the Motion by Defendant Ceridian Corporation ("Ceridian") for Protective Order Regarding Plaintiffs' Discovery (Dkt. No. 209). Ceridian seeks a protective order pursuant to Federal Rule of Civil Procedure 26(c), protecting it and non-party UCLA Office of Record Management from compliance with a subpoena duces tecum served upon non-party UCLA Office of Record Management ("UCLA subpoena") for documents and information relating to the Ceridian-UCLA Pulse of Commerce Index™ ("PCI") which is maintained by the UCLA Anderson School of Management ("UCLA Anderson"). For the reasons stated hereafter, the Motion will be denied.

I.  **BACKGROUND**.

Ceridian is a partner with UCLA Anderson in a joint venture which was first launched in February, 2010 and involves

the creation and public roll-out of the PCI.[1]  The PCI is an economic indicator that relies on data regarding changes over time in the volume of diesel fuel purchases by long-haul trucks, broken down through regions throughout the United States.  Mem. Law in Supp. Mot., p. 2 (citing http://www.ceridianindex.com/).  Defendant Comdata Corporation ("Comdata"), a subsidiary of Ceridian, "offers the Comdata card and other electronic card payment services to transportation industries that, when used, capture transaction data about diesel fuel purchases."  Id.  The PCI uses this fuel consumption data to make certain predictions about the state of the economy.  Id.

Plaintiffs served PCI-related discovery on Ceridian and Comdata on March 4, 2010.  Plaintiffs specifically raised the issue of discovery regarding the PCI during a telephone conference with Ceridian on March 5, but Ceridian's counsel did not want to discuss the issue and did not confer thereafter with Plaintiffs' counsel to resolve any concerns of Ceridian over PCI discovery.  Pls.' Resp., p. 10.  Plaintiffs thereafter served UCLA with the UCLA subpoena on March 20, 2010 seeking production of a host of documents regarding the PCI and communications

---

[1] According to Ceridian's Motion, Ceridian, economists from Charles River Associates, and Dr. Edward Leamer, an economics professor from UCLA, joined together to create the PCI.  Mem. Law in Supp. Mot., p. 3.

between Ceridian, Comdata, Charles River and UCLA.[2]  The

---

[2]  The requests are as follows:

REQUEST FOR PRODUCTION NO. 1: All documents relating to the Ceridian-UCLA Pulse of Commerce Index, including all related reports and analyses.

REQUEST FOR PRODUCTION NO. 2: Documents sufficient to identify all persons responsible for establishing, administering, maintaining, constructing, organizing, calculating, or publicizing: (1) the Ceridian-UCLA Pulse of Commerce Index; or (2) the PCI Data.

REQUEST FOR PRODUCTION NO. 3: Documents sufficient to show the source and location of the PCI Data or other information used to construct the Ceridian-UCLA Pulse of Commerce Index.

REQUEST FOR PRODUCTION NO. 4: Documents sufficient to show how the Ceridian-UCLA Pulse of Commerce Index is constructed, including any software, applications, formulae, or procedures.

REQUEST FOR PRODUCTION NO. 5: All documents relating to all agreements (and the negotiations thereof) and communications between and among, Ceridian, Comdata, UCLA Anderson School of Management, Charles River Associates, and/or any other third party regarding the Ceridian UCLA Pulse of Commerce Index.

REQUEST FOR PRODUCTION NO. 6: All documents relating to all agreements (and the negotiations thereof) and communications between and among, Ceridian, Comdata, UCLA Anderson School of Management, Charles River Associates, and/or any other third party regarding any analysis of the PCI Data performed before the formation of the Ceridian-UCLA Pulse of Commence Index.

REQUEST FOR PRODUCTION NO. 7: All documents relating to the PCI Data Ceridian has provided and will continue to provide to the UCLA Anderson School of Management for use in calculating the Ceridian-UCLA Pulse of Commerce Index, including the actual PCI Data provided. This request includes documents sufficient to identify the name and address of all Trucker Fleets and Truckers whose transactions are found in the aforementioned data and the Truck Stops where those transactions were processed.

REQUEST FOR PRODUCTION NO. 8: All documents relating to Ceridian's "electronic card payment services for the transportation industry," Ceridian's "database" that "captures the location and number of gallons pumped into the tank" every time "an over the road truck makes a diesel fuel purchase using a Ceridian

3

UCLA Subpoena called for production by April 5, 2010, but Plaintiffs extended the time for objection until April 7 and time for response to April 19, 2010.  On April 6, 2010, Comdata served its objections and responses to Plaintiffs' discovery requests, representing that it would produce to Plaintiffs the raw data that it provided to Charles River Associates.  Reply, 5/4/10, p. 2; Ex. A., at resps. 1-3, 5.  Comdata did not provide a date for the production of the raw data.

Also on April 6, 2010, Ceridian filed the instant Motion for Protective Order in this Court and a Motion to Quash in the United States District Court for the Central District of California, the District in which the UCLA Subpoena was issued. On April 8, 2010, Plaintiffs' counsel requested that Ceridian withdraw the instant Motion so that the parties could meet and confer in compliance with Local Rule 26.1(f) and this Court's procedures.  According to Plaintiffs, Ceridian refused and made no effort to negotiate with Plaintiffs to resolve this issue without resorting to motion practice.  Pls.' Resp., p. 10.

Plaintiffs' Response to the Motion for Protective Order

---

> Card," Ceridian's ability to "track this data ... on a yearly, monthly, weekly and daily basis," and Ceridian's analyses of this data. (See Ceridian's Ceridian Index webpage at www.ceridianIndex.com/about-the-Index/backgrounder/.) This request includes all communications between and/or among Ceridian, Comdata, UCLA Anderson School of Management, Charles River Associates, and/or any other third party regarding such data.

UCLA Subpoena at 5-7.

(Dkt. No. 228) was filed May 3, 2010.  Ceridian's Reply (Dkt. No. 229) was filed May 4, 2010, and Plaintiffs' Reply (Dkt. No. 230) was filed May 4, 2010.  A telephonic discovery conference was held on May 5, 2010, and Ceridian filed supplemental briefing (Dkt. No. 236) on May 7, 2010.  Plaintiffs filed a response to Ceridian's supplemental briefing (Dkt. No. 240) on May 12, 2010, and Ceridian filed a reply to Plaintiffs' response (Dkt. No. 245) on May 14, 2010.  Plaintiffs filed an informal motion to strike Ceridian's May 14, 2010 reply (Dkt. No. 246) on May 14, 2010, and Ceridian faxed an update on May 24, 2010 (Dkt. No. 252) stating that Comdata produced on May 21, 2010 all of the raw transactional data which Comdata originally provided to Charles River Associates, Inc. which served as a basis for the PCI.  During a telephonic discovery conference for other discovery issues between Ceridian and Plaintiffs on June 3, 2010, this Court sought Plaintiffs' reaction to Ceridian's May 24, 2010 facsimile transmission and whether Comdata's recent production of the raw transactional data from the formation of the PCI satisfied Plaintiffs' PCI discovery requests.  Counsel for Plaintiffs responded that the information which was produced on May 21, 2010 may partially satisfy the current discovery requests, but Plaintiffs' discovery requests seek additional information beyond the raw transactional data that would yield information showing Ceridian's active involvement of the ordinary

5

day-to-day management of Comdata's Fleet Card business.[3]

## II. **STANDARD OF REVIEW**.

Pursuant to Federal Rule of Civil Procedure 26(c)(1), a "court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c)(1). "It is well established that the party wishing to obtain a protective order bears the burden of demonstrating that 'good cause' exists for the order." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 175 (E.D. Pa. 2004)(quoting Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994)). In addition to bearing the burden to show good cause, the party moving for a protective order must demonstrate such cause with specificity "beyond bald assertions of harm for each specific request that it wants protection from." Id. at 196.

---

[3] In Plaintiffs' May 3, 2010 Response to the Motion for Protective Order, Plaintiffs state that:

> The Index is one of the manifestations of Ceridian's involvement and control of Comdata's business operations, including the setting of transaction fees. In fact, Ceridian markets the Index as a measure of economic activity based upon systematic, nation-wide transactional data that Ceridian collects regarding the fuel card transactions using the Comdata Fleet Card. These fuel card transactions are the same transactions that give rise to Plaintiffs' claims in this case.
>
> For example, as Ceridian has admitted, the "Index expert" at Ceridian is not a Comdata employee, but a Ceridian employee: Ceridian Senior Vice President Craig O. Manson.

Pls.' Resp., p. 3.

## III. **DISCUSSION**.

Ceridian seeks entry of a protective order for the following reasons: (1) it is necessary and appropriate under Fed. R. Civ.P. 26(c) to prevent discovery into matters Ceridian characterizes as irrelevant and thereby preclude the UCLA Subpoena and any other discovery targeting the PCI; and (2) it is appropriate to prevent the disclosure of confidential research, development and commercial information.  Ceridian contends that it has standing to challenge Plaintiffs' discovery directed to the PCI and standing to challenge discovery targeting PCI served on UCLA.  Finally, Ceridian contends that the UCLA Subpoena and any other discovery regarding the PCI is harassing because it seeks information not within the proper scope of Fed. R. Civ. P. 26(b)(1).

Plaintiffs, not surprisingly, contend that Ceridian fails to show good cause for entry of a protective order.  According to Plaintiffs, Ceridian's assertion that Plaintiffs failed to provide proper notice for the UCLA Subpoena is frivolous.  As Plaintiffs correctly note in a footnote on page 10 of their Response, "[a]rguments regarding the subpoena are properly directed to Judge Real who is charged with handling the third party subpoena in the District Court for the Central District of California."  Resp. at 10.  A hearing is scheduled for Monday, June 7, 2010 before District Judge Real, on the

7

pending Motion to Quash before that Court. Accordingly, this Court must avoid commenting on assertions related to the pending Motion to Quash.

Plaintiffs also argue that: (1) the relief sought in the instant Motion is "remarkably ambitious" because it seeks to enjoin Plaintiffs from pursuing broad categories of information from any party or non-partywide spectrum of discovery; (2) discovery concerning the PCI is relevant because it shows Ceridian's involvement in this litigation and Plaintiffs are entitled to the transactional data used to calculate the index; and (3) Plaintiffs cannot be precluded from seeking confidential information.

**A. Whether A Protective Order is Necessary to Prevent Disclosure of Information Ceridian Contends Is Irrelevant.**

Ceridian contends that Plaintiffs' discovery requests related to the PCI seek irrelevant information and compliance with the requests will be unduly burdensome. In contending that the discovery requests are largely irrelevant to the instant litigation, Ceridian relies on McCurdy v. Wedgewood Capital Mgmt Co., 1998 WL 964185 (E.D. Pa. Nov. 16, 1998), in which Magistrate Judge Peter Scuderi stated that "Irrelevancy satisfies the good cause requirement." Ceridian contends that these requests are "unwarranted fishing expeditions into purported 'alter ego' status" and are inappropriate. Ceridian Supp. Br., p. 2.

8

Plaintiffs distinguish McCurdy as an ERISA action regarding an alleged breach of fiduciary duty that concerned, in part, whether the plaintiff was entitled to discovery regarding the defendant's ability to satisfy a judgment. Plaintiffs note that McCurdy says nothing about how Rule 26 generally permits liberal discovery in an antitrust case such as the instant case on material that may be relevant to merits and class certification issues. Pls.' 5/12/10 Resp., p. 7 (citing American Health Systems, Inc. v. Liberty Health System, 1991 WL 30726, *2-*3 (E.D. Pa. Mar. 5, 1991)(recognizing the "general policy of allowing liberal discovery in antitrust cases.").

Ceridian also argues that permitting discovery into PCI-related materials will substantially and unduly burden Ceridian. In its supplemental briefing filed on May 7, 2010, Ceridian outlined approximately 38 total custodians, including those employed by Ceridian, UCLA, Charles River and Weber Shandwick,[4] with some PCI-related information. Ceridian estimated that the approximate total scope of data that would need to be collected, reviewed, and produced for each entity is 1,017.7 gigabytes of email, hard copy and non-email

---

[4] Weber Shandwick is identified by Ceridian for the first time in its supplemental brief as the public relations agency helping to prove the value of the PCI to the media and manages the PCI website. Weber Shandwick has been working on the PCI since November 2009. Ceridian Supp. Br., p. 3.

Plaintiffs state that they are amenable to foregoing discovery regarding the 12 custodians at Weber Shandwick, a position they would have made clear if the requisite discovery meet and confer had taken place. Pls.' 5/12/10 Resp., pp. 4-5.

Electronically Stored Information ("ESI").

Plaintiffs, in response, note that Ceridian confirms that responsive documents exist in both hard copy and ESI form, there appear to be approximately 4700 potentially responsive hard copy pages, and with respect to ESI, Ceridian fails to argue that any portion of the possibly responsive ESI is "not reasonably accessible because of undue burden or cost" pursuant to Federal Rule of Civil Procedure 26(2)(B). Plaintiffs also note that the page counts appear to be exaggerated or inaccurate because there is no delineation of ESI that Comdata has agreed to produce and other forms of ESI such as emails and memoranda. Plaintiffs also note that tools exist to reduce the burden of reviewing ESI. Plaintiffs note that there may be an overlap of custodians Ceridian has already identified who have documents responsive to Plaintiffs' Second Request for Production, and additional search terms could be added regarding the PCI as appropriate.

Because discovery is still ongoing in this case, Ceridian should have disclosed to Plaintiffs the existence of the PCI and any potentially responsive ESI or other documentation relating to the PCI. Despite Comdata's production, this Court finds that Ceridian has not shown that the information related to the PCI is irrelevant to the instant antitrust action, and that compliance with the requests will be unduly burdensome.

**B.   Whether Entry of A Protective Order is Appropriate To
         Prevent the Disclosure of Confidential Research,
         Development and Commercial Information.**

Ceridian alternatively argues that Rule 26(c)(1)(G) provides that a court may bar discovery into matters that would require disclosure of a trade secret or other confidential research, development, or commercial information. See Fed. R. Civ. P. 26(c)(1)(G). Ceridian characterizes the PCI as a "newly-created, unprecedented and novel joint venture" and "its construction and methodology are each highly confidential." Ceridian and UCLA have trademarked the Index and are in the process of securing a patent for it, and Ceridian, UCLA, and Charles River have sought to maintain the confidentiality of the proprietary information underlying the development, creation, and calculation of the Index. Resp., p. 15 (citing McClure Decl., ¶ 14).

Ceridian argues that other companies which possess data about transactions in the trucking industry could be very interested in how Ceridian, Charles River, and UCLA created this new Index including co-Defendants in this litigation such as Travel Centers of America, Pilot Travel Centers, LLC, and Love's Travel Stops & Country Stores, Inc., and rivals in the fuel card or credit card arena such as Flying J, Inc. According to Ceridian, requiring production of this highly sensitive information could significantly harm it by providing competitors

11

with a blueprint to copy the PCI and its underlying analytical framework.  Id.  Ceridian therefore seeks entry of a protective order precluding all PCI-related discovery pursuant to Federal Rule of Civil Procedure 26(c)(1)(G).

Ceridian's argument fails because the operative Protective Order in this case is the Protective Order entered on February 20, 2008.  Ceridian argues that the protective order in place for the original 2007 action should not govern this newly consolidated case because Ceridian and the Chain Defendants never agreed to its terms, and negotiations regarding a protective order in the now-consolidated 2009 action produced an agreement to modify the 2007 Protective Order.  No agreement was ever reached between the parties as to a protective order in the 2009 case, and Judge Gardner's consolidation of the 2007 and 2009 cases and this Court's March 31, 2010 order denying as moot Plaintiffs' Motion for Protective Order in the 2009 case ultimately leaves the February 20, 2008 Protective Order intact and operative.  As Plaintiffs note, the terms of that Order state: "This Order shall apply to . . . all parties currently named or later joined in this action . . . ."  (2/20/09 Protective Order, ¶ 2).

Plaintiffs note that the February 20, 2008 Protective Order guides production as follows:

> if the discovery requests call for
> confidential information, the responding

12

> party may designate particular documents as "Confidential" or "Highly Confidential," according to the procedure described in the Protective Order. The producing party may designate documents as either "Confidential" or "Highly Confidential" if those documents contain "trade secrets" or "non-public research and analysis." (Protective Order at 2.) Once so designated, the documents may only be disclosed to particular individuals directly related to the litigation. (Protective Order at 3-4.) Documents designated "Highly Confidential" may not be disclosed to in-house counsel (or any other employee of the parties) without the written consent of the producing party. (*Id.*)

Resp. at 8. The language of the governing protective order is sufficient to protect any information disclosed regarding the PCI. Moreover, the disclosures will be made to the Plaintiffs, not to any of Ceridian's co-Defendants that Ceridian has identified as competitors. Accordingly, the Motion for Protective Order will be granted to the extent that any information disclosed shall be labeled and produced pursuant to the requirements in the governing February 20, 2008 Protective Order. The Motion will be denied in all other respects.

An appropriate Order follows.