

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**MARCHBANKS TRUCK SERVICE, INC.,** *et al.*, **on behalf of themselves and all others similarly situated,**

**Plaintiffs,**

v.

**COMDATA NETWORK, INC., d/b/a COMDATA CORPORATION,** *et al.*,

**Defendants.**

**Civil Action No. 07-1078-JKG**

**ORDER,** *INTER ALIA*, **GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**FILED**

JUL 1 4 2014

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

WHEREAS, the Court, having considered Plaintiffs' motion for final settlement approval

and supporting documents, the Plan of Allocation and Distribution, and the Settlement

Agreement dated March 3, 2014 (the "Settlement Agreement"), between and among the

Plaintiffs, Plaintiffs' Class Counsel, and Defendants, the Court's March 17, 2014 Order Granting

Preliminary Approval of the Class Settlement, Provisionally Certifying a Settlement Class,

Directing Notice to the Class, and Scheduling Fairness Hearing [Dkt. 705] (the "Preliminary

Approval Order"), having held a Fairness Hearing on July 14, 2014, and having considered all of

the submissions and arguments with respect to the settlement, and otherwise being fully

informed, and good cause appearing therefore;

IT IS HEREBY ORDERED AS FOLLOWS:

1.      This Final Order incorporates herein and makes a part hereof, the Settlement

Agreement and its exhibits and the Preliminary Approval Order and its exhibits.  Unless

otherwise provided herein, the terms defined in the Settlement Agreement and Preliminary

Approval Order shall have the same meanings for purposes of this Final Order and the

accompanying Final Judgment.

      2.     The Court has jurisdiction over this case, *Marchbanks Truck Service Inc. v.*

*Comdata Network, Inc.*, 07-1078 (the "Action"), and all Parties in the Actions, including, but not

limited to, all Settlement Class Members, for all matters relating to this Action and the

settlement, including, without limitation, the administration, interpretation, effectuation and/or

enforcement of the settlement, the Settlement Agreement, and this Order.

## I.    THE SETTLEMENT CLASS

      3.     In the Preliminary Approval Order, the Court certified the following Settlement

Class for settlement purposes only:

> All owners and operators of Truck Stops or other Retail Fueling
> Facilities with at least one physical location in the United States
> that paid Merchant Transaction Fees directly to Comdata on
> Comdata Proprietary Transactions and that were calculated based
> on a percentage of the face amount of the transaction between
> March 1, 2003 and March 17, 2014 with the exception of Mobile
> Fuelers, Wilco-Hess locations, the Pilot Defendants, the TA
> Defendants, and Love's and any of the parents, subsidiaries,
> affiliates, franchisees or employees of any of the Defendants.

## II.    CLASS NOTICE

      4.     The record shows, and the Court finds, that the Class Notice has been given to the

Settlement Class in the manner approved by the Court in its Preliminary Approval Order. The

Court finds that such Class Notice constitutes: (i) the best notice practicable to the Settlement

Class under the circumstances; (ii) notice that was reasonably calculated, under the

circumstances, to apprise the Settlement Class of the pendency of the Actions and the terms of

the Settlement Agreement, their right to exclude themselves from the settlement or to object to

any part of the settlement, their right to appear at the Fairness Hearing (either on their own or

through counsel hired at their own expense), and the binding effect of the orders, the Final Order,

and the Final Judgment in the Actions, whether favorable or unfavorable, on all persons who do

not exclude themselves from the Settlement Class, (iii) due, adequate, and sufficient notice to all

persons or entities entitled to receive notice; and (iv) notice that fully satisfies the requirements

of the United States Constitution (including the Due Process Clause), Fed. R. Civ. P. 23, and any

other applicable law.

     5.      Due and adequate notice of the proceedings having been given to the Settlement

Class and a full opportunity having been offered to Settlement Class Members to participate in

the Fairness Hearing, it is hereby determined that all Settlement Class Members except those

Opt-Outs identified on Appendix A are bound by this Final Order and the Final Judgment.

     6.      The Court further finds that Defendants provided notice of the settlement to the

appropriate state and federal government officials pursuant to 28 U.S.C. § 1715. Furthermore,

the Court has given the appropriate state and federal government officials the requisite ninety

(90) day time period to comment or object to the settlement before entering its Final Order and

Final Judgment.

## III.    **FINAL APPROVAL OF THE SETTLEMENT AGREEMENT**

     7.      The Court finds that the Settlement Agreement was not the result of collusion

between Plaintiffs' Class Counsel and Defendants, or their respective counsel, but instead

resulted from extensive *bona fide* arm's-length good faith negotiations between Plaintiffs' Class

Counsel and Defendants, through experienced counsel, and with the assistance and oversight of

Professor Eric D. Green of Resolutions LLC and the Court.

     8.      Pursuant to Fed. R. Civ. P. 23(e), the Court hereby finally approves in all respects

the settlement as set forth in the Settlement Agreement and finds that the settlement, the

Settlement Agreement, the benefits to the Settlement Class Members, the Plan of Administration

and Distribution, and all other parts of the settlement are, in all respects, fair, reasonable, and

adequate, and in the best interest of the Settlement Class, within a range that responsible and experienced attorneys could accept considering all relevant risks and factors, and are in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and the Class Action Fairness Act. Accordingly, the settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

9.      The Court finds that the settlement is fair, reasonable and adequate in light of the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), based on the following factors, among other things:

      a.      This case was highly complex, expensive and time consuming and would have continued to be so through trial if the case had not settled;

      b.      There were no objections to the settlement by Settlement Class Members and certain Settlement Class Members and Buying Groups representing a significant number of Settlement Class Members expressed affirmative support for the settlement;

      c.      Because the case settled after the close of fact and expert discovery, after the parties had briefed discovery motions, motions to preclude certain expert testimony and certification of a litigation class and while the Parties were preparing for a three-day class certification hearing, Plaintiffs' Class Counsel has a full appreciation of the strengths and weaknesses of their case while negotiating the settlement;

      d.      Plaintiffs' Class Counsel and the Settlement Class would have faced numerous and substantial risks in establishing liability and damages if they decided to continue to litigation rather than settle;

4

      e.     The settlement amount is well within the range of reasonableness in light of the best possible recovery and the risks the Parties would have faced if the case had continued to verdicts as to both liability and damages; and

      f.     The settlement also satisfies that additional factors set forth in *In re: Prudential Ins. Co. of Mer. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998).

10.     The Court approves the Plan of Allocation and Distribution (the "Plan") of the Net Settlement Fund as proposed by Plaintiffs' Class Counsel and incorporated into the Settlement Agreement. The Plan, which is summarized in the Long Form Notice, proposes to distribute the Net Settlement Fund *pro rata* based on each Settlement Class Member's alleged damages associated with certain Comdata Proprietary Transactions during the Settlement Class Period and does so fairly and efficiently. The Court further directs Rust Consulting, Inc., the firm appointed Settlement Administrator in the Preliminary Approval Order, to administer the settlement and distribute the Net Settlement Fund proceeds in the manner provided in the Plan.

## IV.    DISMISSAL OF CLAIMS, RELEASE, AND INJUNCTION

11.     The Action is hereby dismissed with prejudice and without costs to any party, except as otherwise provided herein or in the Settlement Agreement.

12.     Upon the Final Effective Date, Plaintiffs and each Settlement Class Member, as well as their respective past, present or future officers, directors, stockholders, members, agents, employees, partners, trustees, parents, subsidiaries, divisions, affiliates, heirs, administrators, purchasers, predecessors, successors, assigns and any other legal representatives, agree to dismiss with prejudice all claims against the Releasees, and grant to each Releasee the broadest general release and covenant not to sue allowed by law, which shall unconditionally and forever bar Plaintiffs and Settlement Class Members from bringing, prosecuting, or participating in any and all claims, known or unknown, that Plaintiffs or Settlement Class Members brought or could

have brought against the Defendants as of the Final Approval Date that arise out of, in whole or in part, or relate in any way to the subject matter of, or conduct alleged in, the Operative Class Complaint in the Actions, as well as any prior complaints filed in the Actions.

13.     Without limiting the foregoing, and although the operative pleadings, filings and transcripts speak for themselves, and shall govern the scope of the claims released and forever barred under this Settlement Agreement and that are subject to any covenant not to sue set forth in this Settlement Agreement, and subject to the limitations and exclusions set out in Paragraph 31 in the Settlement Agreement and Paragraph 15 of this Order, claims based on the following are specifically released, barred, and subject to the covenant not to sue set forth herein:

   a.     Comdata's and Ceridian's alleged monopoly or market power in supposed markets for OTR Fleet Cards or point-of-sale devices that route OTR Fleet Cards, or any other similar markets;

   b.     the alleged inflation of the Comdata Merchant Transaction Fee paid by merchants as a result of alleged anticompetitive conduct of Comdata or any other Defendant;

   c.     the so-called fee restructuring under which Comdata and Ceridian in or around 2000 and 2001 changed its Merchant Transaction Fee Structure for non-Major Chain merchants and required those merchants to pay Comdata Merchant Transaction Fees based on a percentage of the face amount of the transaction while retaining a flat Merchant Transaction Fee structure for the Major Chains;

   d.     any alleged conspiracy between and among Comdata, Ceridian and/or any of the Major Chains with regard to any payment instrument, payment method, or point-of-sale device provided by Comdata;

6

e.     the non-issuance of an OTR Fleet Card by each of the Major Chains, and in particular, the claim that such decision was the result of an agreement, including without limitation any oral agreement, written contract or letter of intent, between or among the Major Chains, and Comdata and/or Ceridian;

f.     the non-acceptance of the TCH Card by each of the Major Chains, and in particular the claim that such decision was the result of an agreement between or among the Major Chains, and Comdata and/or Ceridian;

g.     the provisions in Comdata's past and/or present Merchant Services Agreements and any other oral or written agreements or understandings between Comdata and/or Ceridian and the Major Chains, including without limitation, the provisions that Plaintiffs have described as the transaction fee MFN, the fuel discount MFN, the active sales ban, the no-surcharge rule, the honor-all-cards rule, and the lowest cash price provision, and any other similar so-called anti-steering provision in Comdata's Merchant Services Agreements with any one of the Major Chains;

h.     the provisions in Comdata's past and/or present Merchant Services Agreements with non-Major Chain merchants, including without limitation the provisions that Plaintiffs have described as the fuel discount MFN, the active sales ban, the no-surcharge rule, the honor-all-cards rule, and the lowest cash price provision, and any other similar so-called anti-steering provision in Comdata's Merchant Services Agreements with any non-Major Chain merchant;

i.     any actious by Comdata and Ceridian to discourage merchants or fleets from accepting or carrying an OTR Fleet Card that competes with Comdata;

7

j.     any loyalty provisions in Comdata's cardholder agreements with fleets, including without limitation any minimum volume commitment provision;

k.     any alleged use by Comdata and Ceridian of its point-of-sale device that reads and routes OTR Fleet Cards to impair competition among OTR Fleet Cards, including without limitations any claim that Comdata programmed its point of sale device not to process or accept competing OTR Fleet Cards;

l.     Ceridian's conduct in engaging in acquisitions which Plaintiffs claim had the purpose and effect of enabling Comdata to monopolize the purported relevant markets, including but not limited to Ceridian's alleged acquisitions of Comdata, NTS, Inc., TIC, Archco, EDS, Fleet Services, Saunders, Inc., IAES, CCIS, and TCC, and Trendar;

m.     Ceridian's alleged alter ego liability arising out of its actions in allegedly overseeing, supervising, actively managing, extending credit to, setting rates and policy for, directing, instructing, and/or being extensively involved with Comdata, including but not limited to in Comdata's negotiations with Major Chains, fleets and other customers; and

n.     Ceridian's alleged direct liability arising out of its actions in allegedly conspiring with, threatening, negotiating with, and/or forming agreements with the Major Chains.

14.     This Release does not release any claims relating to conduct occurring or actions taken by any of the Defendants or Releasees after the Final Approval Date except to the extent that such claims (a) pertain to the terms of Comdata's Merchant Services Agreements, either with Settlement Class Members or the Major Chains, as modified by the prospective relief described above, or (b) are based upon conduct or activity that is expressly required by or consistent with the terms of this Settlement Agreement, in which case such claims (except to the

8

extent they relate to any breach of this Settlement Agreement) are expressly released herein. Nor does the Settlement Agreement release any claims (a) arising out of contractual terms imposed or offered by any OTR Fleet Card issued by any entity other than Comdata, but only where such OTR Fleet Card is generally made available for acceptance by Truck Stops and Retail Fueling Facilities and is not exclusive to any particular Major Chain, or (b) involving standard commercial disputes arising in the ordinary course of business, such as disputes regarding lines of credit or other related credit relations, individual chargeback disputes, misappropriation of cardholder data or invasion of privacy, and compliance with technical specifications for acceptance of any Comdata product or other product sold by Defendants. Further, nothing in the Release shall preclude any action to enforce the terms of the Settlement Agreement.

15.     Settlement Class Members have knowingly and voluntarily waived the provisions of Section 1542 of the California Civil Code (to the extent applicable), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.

Settlement Class Members expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable, or equivalent to Section 1542, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, the Settlement Class Members acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or

9

believe exist with respect to Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims known or unknown, suspected or unsuspected, that they have against the Releasees. In furtherance of such intention, the release herein given by the Settlement Class Members to the Releasees shall be and remain in effect as a full and complete general release notwithstanding the discovery or existence of any such additional different claims or facts.

16.    The Court orders that, upon the Final Effective Date, the Settlement Agreement shall be the exclusive remedy for any and all Released Claims of Settlement Class Members. The Court thus hereby permanently bars and enjoins Plaintiffs, all Settlement Class Members, and all persons acting on behalf of, or in concert or participation with such Plaintiffs or Settlement Class Members or any other person or entity subject providing the Release, from: (a) filing, commencing, asserting, prosecuting, maintaining, pursuing, continuing, intervening in, or participating in, or receiving any benefits from, any lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based upon or asserting any of the Released Claims against any Releasee; (b) bringing a class action on behalf of Plaintiffs or Settlement Class Members, seeking to certify a class that includes Plaintiffs or Settlement Class Members, or continuing to prosecute or participate in any previously filed and/or certified class action, and/or in any lawsuit based upon or asserting any of the Released Claims against any Releasee. Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this permanent injunction is necessary and appropriate in aid of its continuing jurisdiction and authority over the Settlement Agreement and the Action.

17.    Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations, or proceedings connected with it, nor any of the documents or statements

10

referred to therein, nor any of the documents or statements generated or received pursuant to the claims administration process, shall be:

      a.    offered by any person or received against any Defendant or Releasee as evidence or construed or deemed as evidence of any presumption, concession, or admission by any Defendant or Releasee of the truth of the facts alleged by the Plaintiffs or any Settlement Class Member or the validity of any claim that has been or could have been asserted in the Actions or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Actions or in any litigation, or of any liability, negligence, fault or wrongdoing of any Defendant or Releasee;

      b.    offered by any person or received against any Defendant or Releasee as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant or Releasee or any other wrongdoing by any Defendant or Releasee; or

      c.    offered by any person or received against any Defendant or Releasee as evidence of a presumption, concession, or admission with respect to any default, liability, negligence, fault, or wrongdoing, or in any way interpreted, construed, deemed, invoked, offered, received in evidence, or referred to for any other reason against any of the settling parties, in any civil, criminal, or administrative action or proceeding; provided, however, that nothing contained herein shall prevent the Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the settlement (or any agreement or order relating thereto) or the Final Order and Final Judgment, or in which the reasonableness, fairness, or good faith of the Parties in participating in the settlement (or any agreement or order relating thereto) is an issue, or to enforce or effectuate

provisions of the settlement, the Final Order, the Final Judgment, or the Release as to the Defendants, the Releasees, Plaintiffs, or the Settlement Class Members.

## V.   **OTHER PROVISIONS**

18.     The Court has jurisdiction to enter this Final Order and the Final Judgment. Without in any way affecting the finality of this Final Order or the Final Judgment, this Court expressly retains exclusive and continuing jurisdiction over the settlement and the Settlement Agreement, including all matters relating to the administration, consummation, validity, enforcement and interpretation of the Settlement Agreement, the Plan, the Final Order, or the Final Judgment, including, without limitation, for the purpose of:

a.      enforcing the terms and conditions of the settlement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, and/or the Final Order or Final Judgment (including, whether a person or entity is or is not a Settlement Class Member);

b.      entering such additional orders, if any, as may be necessary or appropriate to protect or effectuate the Final Order, the Final Judgment, and the Settlement Agreement, or to ensure the fair and orderly administration of the settlement; and

c.      entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction over the Settlement Agreement.

19.     Without affecting the finality of this Final Order or the Final Judgment, Defendants and each Settlement Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement, including any suit, action, proceeding or dispute relating to the Release provisions herein.

20.     The Parties are hereby directed to implement and consummate the settlement according to the terms and provisions of the Settlement Agreement.

21.     Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.  Likewise, the Parties may, without further order of the Court, agree to and adopt such amendments to the Settlement Agreement (including exhibits) as are consistent with this Final Order and the accompanying Final Judgment and do not limit the rights of Settlement Class Members under the Settlement Agreement.

22.     In the event that the Final Effective Date does not occur, certification shall be automatically vacated and the Final Order and Final Judgment, and all other orders entered and releases delivered in connection herewith, shall be vacated and shall become null and void as provided by the Settlement Agreement.

23.     Nothing in this Final Order or the accompanying Final Judgment shall preclude any action in this Court to enforce the terms of the Settlement Agreement.


IT IS SO ORDERED, this 14th day of July, 2014.


THE HONORABLE JAMES KNOLL GARDNER
UNITED STATES DISTRICT COURT JUDGE

13

## APPENDIX A: ENTITY OPTING OUT FROM SETTLEMENT CLASS

Tedeschi Food Stores #119
1099 William S. Canning Blvd.
Fall River, MA 02721-3128